# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ARTHUR STAMPLEY (#424121)**                              **CIVIL ACTION**

**VERSUS**

**KEITH DEVILLE, WARDEN**                              **NO. 15-0460-SDD-EWD**

## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 10, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ARTHUR STAMPLEY (#424121)                    CIVIL ACTION

VERSUS

KEITH DEVILLE, WARDEN                         NO. 15-0460-SDD-EWD

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the application by Petitioner Arthur Stampley for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

### I. Procedural History

On December 15, 2011, the State filed a Bill of Information in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, charging Petitioner with the second degree kidnapping of Kimberly Brown on October 21, 2011. Petitioner subsequently waived his right to a trial by jury and, after a bench trial conducted in October 2012, Petitioner was found guilty of the responsive offense of simple kidnapping. The State thereafter charged Petitioner with being a multiple offender and, following a hearing at which Petitioner conceded the charge, the trial court found him to be a third felony offender. The trial court subsequently sentenced Petitioner on April 9, 2013 to a term of ten (10) years of imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence.

Petitioner pursued a direct appeal, asserting as a single assignment of error that the evidence was insufficient to support the conviction. On February 18, 2014, the Louisiana First Circuit Court of Appeal affirmed Petitioner's conviction and sentence. *See State v. Stampley,*

2014 WL 651856 (La. App. 1 Cir. Feb. 18, 2014). Petitioner thereafter sought further review before the Louisiana Supreme Court and, on October 24, 2014, that court denied review, without comment. *See State v. Stampley*, 151 So.3d 598 (La. 2014).

Petitioner signed his federal habeas corpus application before this Court on July 13, 2015, and it was electronically filed herein on July 15, 2015. Petitioner asserts as a single ground for relief that the evidence was insufficient to support the conviction.

## II. Factual Background

The facts, as summarized in the opinion of the Louisiana Court of Appeal for the First Circuit, are as follows:

> Kimberly Brown, the victim, began dating the defendant in 2009. According to the victim, their romantic relationship ended in early 2011, but the defendant remained in contact with the victim and her children. On October 21, 2011, the defendant went to the victim's residence located in Baton Rouge to visit her children and drop off the social security card for one of the children. After the defendant left, a male acquaintance who the victim only knew as Jay arrived to take the victim to see a midnight movie. When they left the residence, the victim noticed that the defendant was following them. She instructed Jay to drive faster and as they drove around a curve, she noticed that the defendant was waving out of his vehicle a silver object that appeared to be a gun. The defendant continued to pursue them as they drove down Bogan Walk, turned left on North Acadian Thruway, and turned right on Gus Young Avenue. The victim called 9–1–1 and reported that they were being chased, provided a description of the defendant's vehicle, asked for immediate assistance, and specifically stated that the person pursuing them had a gun. When they arrived at Lobdell Boulevard, a vehicle pulled in front of them and Jay lost control of his vehicle as it started spinning. The defendant's vehicle was also damaged at this point and when Jay's vehicle came to a stop it was inoperable. The defendant exited his vehicle and headed toward Jay's vehicle on foot. As Jay was unable to start his vehicle, the victim got out and attempted to flee on foot and the defendant ran after her. In an effort to escape, the victim attempted to get in a vehicle being driven by a female bystander, but the door was locked. The victim fell as the defendant

physically attacked her. As he cursed the victim, he repeatedly hit her with a closed fist. The defendant continued to beat her while they were in the middle of the road and the gun fell to the ground. The defendant picked it up before the victim could determine if the gun was real or fake. The female bystander called 9–1–1 to report her observations, indicating that an unknown female tried to get into her car before a male knocked her down to the ground and dragged her to his vehicle.

The defendant drove the victim to the Hi Nabor Supermarket on Winbourne Avenue, parked in the back of the parking lot, and started hitting and cursing the victim. The victim made several attempts to exit the defendant's vehicle, but the defendant prevented her from escaping. At one point, when the defendant got out of the vehicle to check his flat tire, she was able to exit the vehicle but the defendant pulled her back in and demanded that she remain in the vehicle. When the defendant could not find his cigarettes, he forced the victim to walk to the gas station with him to purchase another pack and then took her to his brother's house. The defendant's brother provided him with tools to repair his tire. The defendant abruptly resumed beating the victim. He pulled her hair, bit her, and hit her in the head with a car jack. The defendant told the victim to get in the back of his vehicle and remove her clothing, she complied, and they had sexual intercourse. The defendant then finally drove the victim back to her residence, instructed her to report the incident only as a car accident, and allowed her to exit his vehicle. The victim's mother immediately called the police, and after the police arrived they interviewed and took photographs of the victim depicting her battered face, scrapes, and bruises. The victim was treated at a hospital where she gave a written statement to the police detailing the incident, including descriptions of the defendant's violent behavior before and after he drove her away from the Lobdell Boulevard intersection. The defendant was placed under arrest when he came to the hospital while the victim was in the emergency room.

*See State v. Stampley, supra*, 2014 WL 651856 at *1.

Based upon the foregoing, the trial judge found Petitioner guilty of the responsive offense of simple kidnapping under Louisiana law.

### III. Applicable Law and Analysis

**A. Standard of Review**

Turning to a substantive consideration of Petitioner's claim, the standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and Petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Review under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster, supra*, 563 U.S. at 182. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id*. at 184. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d). *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[1]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

The State contends that, applying this standard to Petitioner's claim, there is no basis for the granting of habeas corpus relief.

---

[1]       The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

Petitioner's Claim That There Was Insufficient
Evidence To Support The Conviction Is Without Merit

The standard for testing the sufficiency of the evidence on federal habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989). This standard of review applies in both direct and circumstantial evidence cases. *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012). In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution of conflicts in the evidence. *Knox v. Butler, supra*, 884 F.2d at 851. *See also Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Hosey v. Goff*, Civil Action No. 1:12CV161-HSO-RHW (S.D. Miss. March 11, 2013) 2013 WL 1500883. Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial. *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005); *Knox v. Butler, supra*, 884 F.2d at 852 n. 7. State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the elements of the offense is entitled to great weight on federal habeas review. *Dickinson v. Cain*, 211 F.3d 126, *5 (5th Cir. 2000); *Hawkins v. Lynaugh*, 844 F.2d 1132, 1134 (5th Cir. 1988). The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *See Quezada v. Avoyelles Correctional Center*, 2015 WL 5061230, *15 (E.D. la. Aug. 17, 2015).

As pertinent to the instant case, Louisiana law defines "simple kidnapping" as "the intentional and forcible seizing and carrying of any person from one place to another without his consent." *See* La. R.S. 14:45. In attacking the sufficiency of the evidence in this case, Petitioner

essentially argues that there was insufficient evidence to establish that his transport of Kimberly Brown from the scene of the above-referenced automobile accident at the intersection of Lobdell and Greenwell Springs on the night of October 21, 2011 was the result of force on his part.   He focuses on isolated aspects of the victim's testimony at trial, wherein she acknowledged that she entered Petitioner's car of her own volition (after her male companion fled the scene) and that she did so, not because of actual force or coercion by Petitioner, but in part because she did not want to be stranded alone in the dark.   Petitioner further contends that the apparent "firearm" that was admittedly in his possession at the time was a plastic "cap gun" and that Ms. Brown was aware of this and so could not have felt coerced by the purported weapon.   Specifically, Petitioner points to Ms. Brown's testimony that, at one point while she was being beaten in the roadway, the "firearm" fell to the ground with a sound that suggested it might be plastic, such that she thought it might be a toy gun.   Petitioner contends that based on this testimony, as well as other asserted inconsistencies in her testimony,[2] no rational trier of fact could conclude that he "forcibly" seized and carried Ms. Brown from one place to another against her will in violation of the referenced statute.

In the Court's view, there is more than sufficient evidence to support Petitioner's conviction.   Pursuant to Ms. Brown's testimony, she was chased and threatened by Petitioner, first in a vehicle (while he was apparently waving a firearm), *see* Tr. Trans. at pp. 20-21, and then on foot when she exited the vehicle in which she was a passenger.   Petitioner then chased her down and apprehended her as she tried to escape in a bystander's vehicle.   She testified that she

---

2       Petitioner's assertions relative to purported inconsistencies in the victim's testimony focus upon the injuries suffered by the victim as a result of the events of October 21, 2011 and whether those injuries were caused by his actions or by the victim having fallen when she attempted to gain access to the bystander's vehicle.   *See* R. Doc. 1-1 at pp. 6-7.   Notwithstanding, the source and extent of the victim's injuries are largely irrelevant to the essential question herein, *i.e.*, whether the victim was forcibly seized and carried by Petitioner against her will.

was then beaten continuously by Petitioner in the middle of the roadway, such that she believed that she was about to die. *See id.* at pp. 22-23 and 39. She was further aware that Petitioner had in his possession an apparent firearm, and although she had substantial doubt as to whether the gun was real, she repeatedly testified that she was not sure about this and only learned later that the gun was a toy. *See id.* at pp. 23 ("really didn't know if it was play or real;" "still thinking it was real"), 24 ("wasn't sure"), 26 ("didn't know if it was fake or real. Still thought it was real"). Thus, according to her testimony, it appears clear that there was sufficient evidence to indicate that she entered Petitioner's vehicle under very coercive circumstances. Although she admitted that Petitioner did not drag her into his car or physically force her inside (as was suggested by a bystander who called 9-1-1) and that she did in fact get in the vehicle of her own volition, she stated that she did so, not only because she did not want to be stranded on the roadway, but also because she believed that if she didn't, he would resume beating her. *See id.* at pp. 24 and 38. Thus, she explicitly testified that she got in the vehicle because she was "afraid if I didn't get in there that something else would happen," specifically either further physical violence or the use of the weapon. *See id.* The mere fact that she acknowledged that she was also admittedly concerned about being left by the side of the roadway at midnight, far from home, suffering with injuries and abandoned by her former companion, does not alter the coercive nature of the situation.

In addition to the foregoing, Ms. Brown testified that she was detained in the vehicle against her will for approximately six hours, during which time she was repeatedly beaten and physically assaulted by Petitioner, with his fists, with a tire tool, and even by being bitten, which conduct apparently left a permanent scar.[3] She testified that she repeatedly requested to be taken

---

[3]     Petitioner admitted in his testimony that he hit Ms. Brown, *see id.* at p. 73, and that he bit Ms. Brown. *See*

home, and although Petitioner ultimately complied, he did not do so for hours and not until he first took her to his brother's residence to change the tire on his car and induced her to have sex with him.

Finally, Ms. Brown testified that she attempted to leave the vehicle on several occasions but was forcibly pulled back in by Petitioner, *see id.* at pp. 26-27, and that during the evening or early morning, Petitioner compelled her to accompany him to a nearby establishment to purchase cigarettes. *See id.* at p. 26. According to Ms. Brown, while doing so, Petitioner concealed the referenced "firearm" in his hooded shirt, which firearm she testified she continued to believe to be real, and she further testified that he threatened to shoot her if she caused any alarm. *See id.* He thereafter returned with Ms. Brown to his vehicle where she was again detained in the vehicle until Petitioner departed the area and transported her, first to his brother's residence and then to her home.

Based on the foregoing, a rational trier of fact could have reasonably concluded that Petitioner forcibly seized and carried Ms. Brown from one location to another against her will in violation of the referenced statute. Whereas Petitioner contends that the victim's willingness to voluntarily enter his vehicle at the beginning of the referenced ordeal precludes a finding of guilt, this argument is not persuasive. In the first place, the violence that preceded her entry into his vehicle, together with the apparent presence of a firearm (that she did not *know* at that time was fake), together with her stated belief that a failure to enter the car would potentially result in further violence, leads to a conclusion that her entry into the vehicle was not in fact "voluntary." Further, and in any event, when Petitioner later refused her repeated entreaties to take her home (including while subjecting her to violence in the vehicle according to Ms. Brown), obstructed her attempts

---

*id.* at p. 79.

to leave the vehicle by physically pulling her back in, and compelled her to accompany him to purchase cigarettes and to return to the vehicle with a threat of shooting her with the concealed gun if she did not comply, this conduct vitiated any initial consent that she may have given. Finally, the courts of the State of Louisiana have clearly rejected Petitioner's arguments in this regard in any event.   Specifically, in *State v. Logan*, 34 So.2d 921 (La. 1948), a similar argument was made in a case involving a victim who voluntarily entered a vehicle when offered a ride but who later requested to be allowed to exit the vehicle when the offender passed her destination, after which the victim ultimately jumped or fell from the vehicle when the offender "reached toward her" to "tak[e] hold of her coat."   The Louisiana Supreme Court concluded, in upholding the defendant's conviction of simple kidnapping and in rejecting a similar argument regarding the victim having voluntarily entered the vehicle:

> Clearly under the facts of this case, the prosecutrix was intentionally and forcibly seized and carried from one place to another within the meaning and contemplation of the statute under which the defendant is charged.   We think, as did the trial judge, that the fact that the defendant did not lay hands on her until she endeavored to get out of the truck does not mean that force was not used in keeping her in the truck for by keeping her in the truck against her will while that vehicle was traveling at a rapid rate of speed constituted a forcible seizure just the same as if the accused had held here therein at the point of a gun without laying hands or [sic] her…. Consequently, when the defendant transported the prosecutrix under these conditions from the place where she wanted to get out of the truck … to the point where she jumped or fell from the moving truck, all against her will, the added element of transportation makes this crime one of Simple Kidnapping ….

*Id*., 34 So.2d at 456-57.   *See also State v. Gray*, 948 So.2 335 (La. App. 2 Cir. 2007) (rejecting a defendant's argument that he could not have committed the offense of attempted simple kidnapping because the victim entered his car voluntarily, concluding that the victim's "consent ceased when she asked him to let her out of the vehicle" after the defendant failed to take the victim home and instead subjected her to verbal threats and to sexual assault).

Based on the foregoing, the trial judge rationally found Petitioner guilty of the offense of

simple kidnapping.   In upholding this finding on direct appeal, the Louisiana First Circuit Court

of Appeal recognized the controlling standard as set forth in *Jackson v. Virginia, supra*, and stated:

> In this case, the evidence clearly shows that the defendant used physical violence
> and that the victim feared for her life when she entered the defendant's vehicle.
> Based not only on the victim's testimony, but also upon the 9-1-1 recordings and
> the defendant's own testimony, the victim was physically injured and clearly
> terrified.   She was forced to leave the Greenwell Springs Road area with the
> defendant and had to stay in the grocery store parking lot for an extended period of
> time.   After several attempts to escape, and being brutally beaten and threatened,
> the victim was finally brought home after complying with the defendant's desire to
> have sexual intercourse.   In reviewing the evidence, we cannot say that the trial
> court's determination was irrational under the facts and circumstances presented.

*State v. Stampley, supra*, 2014 WL 651856 at *5.   It is not this Court's function to determine what

the state trial judge, as factfinder, could have found if only he had viewed the evidence differently.

Instead, this Court's role is to determine whether the evidence, viewed in a light most favorable to

the prosecution, was sufficient to prove every element of the crime beyond a reasonable doubt.

Moreover, as noted above, this Court is limited to determining whether the Louisiana courts

unreasonably applied the due process standards of *Jackson v. Virginia, supra*, in affirming

Petitioner's conviction.   Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue shall be

presumed correct, and Petitioner has the burden of rebutting this presumption of correctness by

clear and convincing evidence.

        In light of the foregoing standard, the Court finds no unreasonable application of *Jackson*

*v. Virginia* and the Due Process Clause.   Viewing the evidence in the light most favorable to the

prosecution, the factfinder could have concluded that Petitioner forcibly seized and carried the

victim from one location to another against her will in violation of the referenced statute.

Accordingly, this Court is unable to conclude that the state court unreasonably applied the standard

set forth in *Jackson v. Virginia, supra*, and Petitioner's contention is without merit relative to this

claim.

Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of the Petitioner's § 2254 application or the correctness of the procedural or substantive ruling. Accordingly, it is appropriate that, in the event that the Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

RECOMMENDATION

It is recommended that Petitioner's application for habeas corpus be denied, and that this proceeding be dismissed, with prejudice. It is further recommended that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on July 10, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**